Fundamentally, this case turns on how this Court will treat the relationship between what is now an absolutely clear and definitive position by the World Trade Organization that zeroing as practiced by the United States in all forms of methodologies and in all types of proceedings as WTO and permissible, between that and the Commerce Department's practice of zeroing. Why isn't what we said in Timken enough to calm your concerns and move us on to the next case? Precisely where I was going now, sir. Oh, good. Because the question before you is, why don't our decisions in Timken and, of course, Staal I dispose of this? It sounded awfully familiar to me, counsel. I would want to bring you something familiar and homelike, sir. Thank you, sir. The decision in Timken turned on two factors that are not present here. You said in Timken you can't look for the WTO decisions because they don't involve U.S. practice. Is there any showing in the record that even if the WTO stuff gets adopted eventually by our country and we make ourselves pure in the world, at least on this issue, that that would have any impact on your case? Absolutely, sir. I'll get to that in just one second if I finish answering the first question, sir. OK. I've got more to go. But go ahead. The first question is, does Timken govern this? Timken was the other case we dealt with in administrative review. You said you couldn't look for guidance to the WTO's decision because it was not on U.S. practice and it was on an investigation instead of a decision. Neither of those factors are present here. U.S. zeroing the WTO decision is directly on U.S. practice, is definitive as to both investigations and decisions. This gives you two issues to consider. One is, can you look to the WTO opinion for guidance in assessing the reasonableness of Congress's position? And secondly, to what extent are you precluded from doing so by the problem you articulated in Clause 1, which is that there is an implementation decision going on now. Because the U.S. has told the WTO it will implement the U.S. zeroing decision. Has it done so yet? Has it done so yet? It is in the process of doing so. Then the current law is that it has not done so yet. I agree, sir. We are judges. We have taken an oath to uphold the law. Do we have a problem there? And frankly, I agree with you, Your Honor, and I wish the government agreed with you on that fact. The government is in a you can't have it both ways position, it seems to me. If they say that implementation is going on that affects as to which your decision here would interfere with that implementation, then you should not go forward with a decision in here. I wouldn't interfere with that implementation. As the judge was just suggesting to you, we deal with the law as it is, not as it may be in some time in the future. Let's parse that out just a second, sir. What will or may implementation involve here? There are two aspects of the U.S. zeroing decision. One, found that zeroing in investigations, including the investigation that gave rise to the order in this case from which these administrative reviews flow, was invalid. It is undisputed that in this case, that a non-zeroed decision in that investigation or in this review would lead to no margin, no order, revocation of the order. Secondly, the WTO decided that zeroing was improper in administrative reviews in 16 of them on an as-applied basis. Stop short of having enough evidence to say there's a practice... Were you one of the 16? No, we're not. Right. Okay, go ahead. First, let's look at the decision as to the order involved here. The decision that that order should not have been done with zeroing. Undisputed, if you don't zero, that order is going to be revoked. And incidentally, the U.S. has told the WTO, in a paper that was submitted to you on Monday, that it views this decision as precluding them from zeroing in any other methodology so they can't change the transaction of zeroing to save the order. The U.S. has also told the WTO, in a challenge that was made to the U.S. implementation practice, that where there is an order revocation required by the WTO decision, first of all, that revocation will affect all imports that come in after the date of revocation. And then they said, and this is very important, and I'll quote from it, we would have to look at, we would have to determine the effect of that revocation on imports that came in prior to the revocation decision, and we would have to do that in the annual review process. What does have to mean? We would be required. That would be our obligation in implementation. Required by whom? By the implementation obligation under U.S. law to implement in retrograde the WTO determination. But this is all very interesting and all well and good, but the implementation hasn't occurred yet. Fine. And it is the obligation of this Court not to interfere with that implementation. And if you are, where there is an open annual review process, as this is still open, until you close it, if you do, by a final determination. The U.S. has stated to the WTO, it is the U.S. position. But you just told us it would be their obligation to go back, so how would we interfere? It would be our obligation to go back in an annual review determination. If you close the annual review process, you take away the implementation prospect. That's what I'm going to give you. And they knew that. You have a timing problem. I know. They knew that. They knew that they would have to implement in that way. Because look at paragraph 2.6 of the panel decision in this WTO case, where they said one of the measures that we're going to implement on, would have to implement on, is the assessment instructions that we would issue. Why didn't you just ask for more time to file your brief, like a couple of years? We did. We denied it. But that was before. You denied that, sir, before the U.S. undertook to implement. Now that the U.S. has undertaken to implement, it is your obligation, as you yourself said, not to get into something which is in the exclusive province of the executive branch, and you will deprive the executive branch of the possibility of implementing as to the duty assessments as to which they have committed to implement. Secondly, there is an implementation issue as to that part of the decision which relates to the rules applicable to competition of margins in administrative reviews. You are quite correct that we are not one of the reviewers. What mistake has the Court of International Trade made? The Court of International Trade did not have these events before it. These events occurred after the Court of International Trade's decision, that both the final determination of U.S. zeroing and the U.S. decision to implement, both of which are crucial to your decision here today. Why don't you persuade us that Commerce messed up by using these multiple date of entry problems so that we'd have to send it back to the CIT and buy you more time that way? My colleague here is about to do that as soon as I finish here. And we would be delighted if you would do that. But I think it's more appropriate for you to, it's appropriate, equally appropriate, for you to remand Commerce for their participation in the implementation process rather than interfere with it. Let me get to the second way. I gather you're really not asking us to decide the case before us. You're asking us to delay the decision until the law is changed in your favor and then decide the case. That depends whether you agree with my argument as to the possible scope of implementation here or with the government's argument. The government, in opposition to our motion for stay, argued heatedly that nothing about the implementation process here in any way implicates this administrative review that's on appeal or the chorus entries as to which duties would be assessed. If that is so, you do not have a bar to considering. That is a bar in the sense of we can't take action that would interfere with implementation. Let's hear from Ms. Keipel. Sure. Since your time is expiring quickly. Happens to me a lot. Thank you, Mr. Cunningham. Ms. Keipel. Thank you, Your Honors. The course here challenges the Commerce Department's use of entry date as opposed to sale date for a subset of course's transactions in terms of determining which transactions should be subject to review. And specifically, Commerce used the date of sale for all the constructed export price sales as well as the export price sales with the date of sale after importation. But then for export price sales where the date of sale was before importation, Commerce used the date of entry, and that's where Chorus has a problem. We believe that was incorrect. Stick with one or the other? Is that your point? That's exactly our point, Your Honor. Is there a statute that precludes what they're doing? The statute does not address this. They do have a regulation, however, Your Honor, that was adopted after notice and comment rulemaking that indicates, and that's Section 351.213E1-2, that in an administrative review, the administrative review will cover entries, exports, or sales during the relevant period. And it's important there that they use the word or. Exactly. And here, the review was, of course, and that's what the U.S. industry asked for a review of, and that's what was initiated, an administrative review, of course. I'm sure they're going to say to us, we did use one of those three alternatives. We just used them at different times. They didn't use them at different times. They used them for different, as the government says, for different classes of sales. However, and the assertion is that the Hynex decision is not inconsistent with that. However, if you look at the Hynex decision, both at the Court of International Trade and at this Court, there was no discussion of different classes of sales. It was a question for a single respondent in a single review, could they use entries plus sales. How is this unfair to you? How is this unfair to us? What happens in this situation is the order was based on Chorus's sales during the period of investigation. Then they switched gears, therefore taking away the predictability as well as the consistency. So as this Court has said, the whole idea with the anti-dumping law is to give the respondents some measure of predictability. Are they consistent in their inconsistency? That is to say, were you the only one singled out for this inconsistent treatment? Well, this particular review covered only Chorus. I understand that. Do they do this to other people as well? So they've only cited one example of a situation where they actually used, and that was in 1998, for a single respondent both date of entry and date of sale. They've cited no other example.  Plus that particular issue was never subsequently contested. Congress explains that they had a reason to use the different calculations in the different phases of the proceeding, and doesn't this again fall under the Hynek's decision, their methodology is presumptively correct? With all due respect, their reason was not really sufficient. They said our questionnaire says, OK, for EP sales, we'll use entry date. For CEP sales, it's OK to use sale date. Or if the questionnaire is a generic- Well, that's a rationale, and that's an explanation for their methodology. Is it our position to simply second guess them or to say, well, if we were doing it, we'd do it a little differently? Well, Your Honor, they do have a regulation, and they are obligated to follow their regulation. It was adopted after former rulemaking pursuant to this Court's precedent. It has the force of law. And the regulation is cached in terms of or, and it says an administrative review. This was an administrative review of Horace's sales during the particular period of review. So you're saying they have to use the same methodology throughout the proceeding, even if the circumstances of particular aspects of the proceeding might justify one calculation for one, a different calculation for another? Is that how you're reading that regulation? In terms of for a single respondent? Yes. Yes. They are obligated to use a single measure. That enhances the verifiability. They themselves have recognized with respect to the date of sale that for a single respondent, they should be using a single measure, because it's much easier for the respondent and for the Commerce Department to go in and verify the data and check it against the respondent's books of records. Is there some inaccuracy here? Did they fail to take all relevant sales into account somehow by altering dates? By altering dates, they shifted the sales that they were examining. And as the Court of International Trade had found in Allegheny Ludlam, any time you shift methodologies, you're going to decrease the accuracy rather than increase the accuracy. And this Court cited to that in this Court's Allegheny Ludlam opinion. OK. Thank you, Ms. Keifel. Thank you. You may retain the remainder of your rebuttal time. May it please the Court, Commerce's final results should be sustained and the trial court's judgment affirmed. Corus has not raised any new issue or any statutory change that would warrant this Court revisiting Commerce's treatment of non-dumped sales, which has been sustained repeatedly by this Court. Why would you guys get rid of the sales that help them and penalize them for the ones that – why wouldn't you look at the entire marketplace? I'm questioning you on zeroing as a policy in the first place. Well, first of all, Aren't you – you want fairness, right? So you want to consider the whole marketplace. You want to consider the sales that are fully fair, maybe even above price, as well as those that are below. Don't you? Yes, Your Honor. Why didn't you do it? Why do you zero out some of them? Well, we do because in the denominator of the zeroing fraction, we do account for all subject merchandise. And in that way, those sales that are above market value in the United States – But U.S. has already considered that methodology to be inaccurate. It's changing, right? No, that's absolutely incorrect. Corus has vastly overstated the U.S. zeroing WTO report. The United States has made its intentions clear that it intends to implement certain aspects of that report, but that report does not find the methodology in administrative reviews to be impermissible. And the statement can be found in paragraphs 228 and 236 of that WTO report. Specifically, the WTO – Is that in our record here? It was submitted by Corus in their first notice of subsequent authority. I would have thought you might have answered Judge Rader's interesting question, and indeed it is an interesting question, by saying, Your Honor, that's an interesting question, but it's foreclosed in this litigation by your precedents. And if you want, we can reconsider the precedents, but I didn't know that a three-judge panel could do that. Well, Your Honor, perhaps that's what I should have said. And hopefully it's what we said in our brief. Corus hasn't raised any kind of intervening change in the statute that would warrant this Court to revisit its holdings in Corus and Timken. And this Court was quite clear that the statute in Section 167735 provides a reasonable explanation for Congress's methodology. Corus has not raised any new interpretation – Corus really isn't permitted to raise any new interpretation of the statute to this panel. Well, sure, they can ask us to take it en banc. This panel may well recommend that. But they haven't done that as yet. And as long as they haven't done this, this Court is bound by its precedent in Corus and Timken. And to the extent that Corus argues that Timken is not applicable here, it's absolutely incorrect. Both Timken and Corus are applicable. Timken obviously concerned an administrative review, and Corus concerned an investigation. But Corus lets us know that this Court is without authority to consider adverse WTO reports unless and until the political branches have concluded any implementation that they seek to implement. And in this instance, the political branches have not concluded any process. And even when they do, or if they do, any implementation is going to be prospective only pursuant to the statute. The statute requires that any implementation is prospective, and that's Section 35. You're suggesting that the insightful panel in Corus I wanted to foreclose this discussion about future WTO activity. Is that what you're saying? I believe that the panel did foreclose this discussion. But of course, Corus I was an original issue. I'm thinking of the term for it. It was an investigation, wasn't it, rather than a follow-up? Yes. That's correct, Your Honor. But the Court statements with respect to how the Court should view adverse WTO reports and the United States determination whether or if to implement applies both to administrative reviews and investigations. In fact, Corus explicitly found that for these purposes, there's no difference between a review and an investigation. I'd like to move on to the second issue so that I don't cut into the defendant intervener's time. With respect to Congress's choice of using date of sale for certain entries and date of entry for others, that choice was reasonable. This Court and the Court of International Trade have held that using date of entry for EP sales is reasonable. This Court and the Court of International Trade have also held that using date of sale for CEP is reasonable. In the original investigation, though, you didn't do it that way, did you, in this case? That's correct, Your Honor. We did not do it that way. But then in the administrative review, you shifted ground. That's correct, Your Honor. What are we to make of that? What you are to make of it is that, first of all, the obligations upon commerce are different in the investigation and in the review. As the defendant intervener points out in U.S. Steel's brief, all commerce is doing in the investigation is generating an estimate for cash deposits. And in the review, it's generating an actual assessment rate. The problem that can happen when commerce changes its methodology over the course of many administrative reviews is certain sales will fall through the cracks. But that only happens from administrative review to administrative review. It doesn't happen from the investigation to the review because, in this instance, there was quite a bit of a lag of time between the two. So the concerns that this court has articulated with respect to consistency over administrative review simply is not an issue here. This is the first administrative review, and commerce's determination was quite reasonable. For the small class of sales that Correx is mostly concerned about, the reason why commerce treated them the way that they did, and the trial court agreed with commerce on this issue, is that they looked, for all intents and purposes, like CEP sales, which is why they were treated as CEP sales. Now we at the trial court had requested a remand to have them reclassified so that everything would look a little bit cleaner, but effectively there's really no difference, practically speaking, because at the end of the day, these sales should be treated as CEP sales because that's what they look like. They are not sold until after importation. That's, by definition, really not an EP sale. I believe that I am just coming up to the end of my time in order to give the defendant intervener. Thank you, Ms. Berg. Mr. Garish? May it please the court, I am Jeffrey Garish, a Skadden armed superior on behalf of the United States Steel Corporation. The Department of Commerce acted properly, both in using its zeroing methodology and in selecting the universe of U.S. sales using calculating courses, dumping margin. This court should therefore uphold the department's final results in their entirety. On the issue of zeroing, we agree with the government that if you were to reach the question of the reasonableness of zeroing under the second problem of Chevron, you must uphold the department's use of zeroing as a reasonable interpretation of the statute. However, we don't believe that you should even reach that question. Instead, there is a threshold question that this court must first decide. That is, whether the use of zeroing is required by the statute. Under the clear requirements of the standard of review, this court must first determine whether a methodology is mandated by the statute under the first problem of Chevron before it even reaches the question under the second problem of Chevron of whether it is reasonable. I would have thought you would argue that the question isn't even before us because of our prior precedent. Well, the question of whether zeroing is required by the statute must be considered by this court. Now, this court's prior decisions were absolutely correct insofar as the statutory provisions that were considered in those decisions. In those decisions, in both Timken and Korestal 1, this court founded a close question as to whether zeroing is required based on statutory definitions of dumping margin and weighted average dumping margin under Section 1677.35. However, in those decisions, the absolutely critical provisions of Section 1677.f1d were not considered. Once those provisions are considered, we would submit that the close question that the court found in Timken is absolutely and finally resolved. Those provisions in Section 1677.f1d show to an absolute certainty, beyond a shadow of a doubt, that the statute requires zeroing. In fact, the sole purpose of Section 1677.f1d is to dictate when weighted average or transaction-specific U.S. prices are to be used in calculating a company's dumping margin. However, if zeroing is not used, it makes no difference whatsoever whether you use weighted average U.S. prices or transaction-specific U.S. prices. You will get the very same margin result. In other words, if zeroing is not used, the provisions of Section 1677.f1d are utterly meaningless. Zeroing is required to give meaning and effect to those provisions. It is as simple and straightforward as that. If you look at Section 1677.f1d, which is attached as an addendum to our brief, it sets forth the comparison methods to be used by the Department of Commerce in calculating dumping margins in three scenarios. Normal investigations without targeted dumping, investigations with targeted dumping, and administrative reviews. These provisions clearly show that it was essential to Congress that a particular comparison method be used to calculate dumping margins, whether it's comparing normal value to weighted average export price or comparing normal value to transaction-specific export price. These different... And that's depending on the different circumstances in the particular case. These different comparison methods must have been intended by Congress to have different results. Without zeroing, however, it simply does not matter which comparison method is used. The end result will always be the same. For example, if zeroing is not used in an administrative review like the review at issue here, the department would get the same dumping margin whether it compared normal value to weighted average U.S. price or to transaction-specific U.S. price. What did the CIT say on this issue that you're now raising to us? The CIT essentially relied on this Court's prior decisions in Timken and Corris in finding that the use of zero is a reasonable interpretation of the statute. Did you raise this statutory question before the CIT? We did. The CIT felt bound by this Court's prior decisions and therefore relied on Problem 2 of Chevron finding it to be a reasonable interpretation of the statute. Okay. So as we showed in our brief, the principle that the department will get the same result if it does not zero can be established to an absolute mathematical certainty in all cases. In fact, the truth of that principle has been recognized by the U.S. government in its arguments to the WTO and by two separate WTO dispute settlement panels considering challenges to the department's use of zeroing. This principle has not been and cannot be disputed. Clearly, it would have been pointless for Congress to provide different comparison methods to be used depending on the circumstances of the case if the same result would be achieved no matter which comparison method is used. Because the statute may not be interpreted so as to render even a single word or single phrase meaningless, the different comparison methods in Section 1677 F1D must be given effect. I take it it's your view that if the administration decides that the WTO is right and that it is improper under our treaty obligations, I take it it's your position that commerce could not by rule change it. It would have to be done by Congress or would you say that the treaty overrides the statute? No, absolutely not, your honor. In fact, the provisions of the URA are very clear on that. If there was a conflict between the U.S. statute and a WTO agreement, the U.S. statute prevails. I believe it's 19 U.S.C. Section 3512. So your view is that nothing that's going to happen in all of the stuff that Mr. Cunningham was telling us about would really have any effect on the zeroing issue anyway because the statute precludes it. That is absolutely correct, your honor. Or precludes the change. That's right, precludes the change. That is absolutely right. And if any change was to be made, it would have to be made by Congress. Does anybody besides you think this is the case? In fact, there is a coalition of domestic industries, the committee to support U.S. trade laws, in fact, agrees with us as well and has made submissions to that effect as well. I believe there are other parties and other cases that may have also presented this argument. So, Coors' only response to the argument that we have made is to take one possible application of the argument and then mischaracterize it. Coors claims that even without certain margin calculation methodology that used investigations with targeted dumping will necessarily yield different results than the methodology used in normal investigations without targeted dumping. There's one fundamental problem with that argument, however. We have never argued that they would get the same result in a targeted dumping situation, that they would get a normal investigation without targeted dumping. That is simply not what we have said. What we have said is that in each individual context or scenario, the Congress has specified that the methodology could be used and if zeroing is not used, then you get the same result regardless of the methodology that is used by Congress. That simply cannot be. Mr. Garrish, your time has expired. Thank you. Mr. Cunningham, are you going to speak? You have three minutes. I'm reassured. It says 11 seconds here. You have three minutes. Let me see if I can summarize where we are here. I really do believe the government is wrong. I can't have you take any particular position here. If the situation is as it was in Tifton, there are two reasons where you're not looking for guidance. Be bound by it. Look for guidance in determining the reason for most of the Congress' decision to the WTO analysis of the zeroing initiative. Neither of those two criteria, neither of those two objections exist here. Those two objections were there's not a U.S. case then and it doesn't part of the U.S. proceeding. Those two are both clearly not a bar here. What is a potential bar? The only potential bar left is dependency of an implementation proceeding that you have said is the exclusive province of the executive branch. The government argues to you in opposition to our view that if that is the case, if there was something that your decision would do that would interfere with the implementation process, you have an obligation not to do it. The government argues nothing about the implementation process here can possibly be affected by a decision of your court because this case is totally outside of the implementation process. If that's so, then you have no bar to looking to the WTO for guidance. If it is so, and I've explained to you that if you bring this case to a halt, you do interfere with the implementation process. You should not prejudge how commerce is going to implement, how USDR and commerce are going to implement. You can't do that. And there are possible, likely ways of implementation here that would be obviated, would be made impossible if you bring this case to a decision. So you should remand to them for the implementation process or stay pending the implementation process. Otherwise you can do exactly what you said you cannot do, which is intrude upon a process that is exclusively in the purview of the political branch. Thank you, Mr. Cunningham.